UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 05-11679-JLT

DEBORAH SIROTKIN BUTLER
         Plaintiff,

v.

CHRYSLER CORPORATION
         Defendant.


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DAIMLERCHRYSLER CORPORATION'S
MOTION TO PRECLUDE EXPERT TESTIMONY
AND FOR SUMMARY JUDGMENT**


Defendant DaimlerChrysler Corporation respectfully submits this Memorandum of Law in Support of its Motion to Preclude Expert Testimony and for Summary Judgment ("Defendant's Motion").  Defendant's motion should be granted for the reasons set forth below, and the plaintiff's Complaint should be dismissed in its entirety, with prejudice.


I.    **STATEMENT OF THE CASE**


This is a products liability action arising out of a motor vehicle accident that allegedly occurred on October 7, 2002, involving a 2000 Dodge Neon being operated by plaintiff Deborah Sirotkin Butler (hereinafter "Ms. Butler" or "plaintiff").  The plaintiff alleges, among other things, that she was injured in the subject accident as a result of DaimlerChrysler Corporation's negligence and/or breach of express and implied warranties in connection with a defect in the

- 2 -

"design of the vehicle under the steering column."  <u>See</u> Defendant DaimlerChrysler Corporation's Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (hereinafter "Rule 56.1 Statement"), at ¶1, and Exhibit A thereto at ¶7.  The plaintiff claims that the material under the column was "unnecessarily hard and unyielding" and that "an individual operating the vehicle with the seat moved forward is placed at risk of serious injury in the event of a collision."  <u>See</u> <u>id., and Exhibit A thereto at ¶¶ 7 and 8.</u>  DaimlerChrysler Corporation denies that the design of the vehicle under the steering column is in any way defective.  <u>See</u> <u>id.</u> at ¶1, and Exhibit B thereto at ¶¶7 and 8.

At the May 9, 2006 Scheduling Conference the Court set a deadline of August 31, 2006 for the plaintiff to "file expert designations," and a deadline of September 29, 2006 to "file expert reports."  <u>See</u> <u>id.</u> at ¶2, and Exhibit C thereto.  Plaintiff did not meet the August 31, 2006 deadline set by the Court in the Scheduling Order. The plaintiff did not provide an expert designation of any kind to DaimlerChrysler Corporation prior to or on August 31, 2006.  Nor did plaintiff meet the September 29, 2006 due date set by the Scheduling Order.  The plaintiff did not provide to DaimlerChrysler Corporation an expert report of any kind prior to or on September 29, 2006.  More than a month beyond the later of the two due dates, still no expert has been disclosed.   No expert report has been produced.

In order to prove her defect and causation allegations in the present case, plaintiff must establish that at the time the vehicle left the defendant's control there was, in fact, a manufacturing or design defect in the area under the steering column of the subject vehicle, and

- 3 -

that, as a result of such defect, she sustained injuries above and beyond those that she otherwise would have sustained as a result of the collision.  To have any hope whatsoever of meeting her burden of proof, plaintiff would have to introduce qualified expert testimony relevant to the claims being made, which by implication include the fields of crashworthiness, biomechanics, accident reconstruction, occupant kinematics, and injury causation.  <u>See</u> <u>Goffredo v. Mercedes-Benz Truck Co., Inc.</u>, 402 Mass. 97, 104 (1988).  However, the plaintiff has failed to serve either expert designations or expert reports; nor has she offered any other indication of expert evidence she would propose to use at trial to support her claims.  <u>See</u> 56.1 Statement at ¶¶3 and 4.

The defendant is entitled to summary judgment based on plaintiff's complete failure to adduce the competent evidence necessary to create a genuine issue of material fact on the issues of product defect and injury causation.

II.    <u>**ARGUMENT**</u>

    A.    **Plaintiff should be barred from presenting expert testimony at trial due to her complete failure to comply with the Court's deadlines for disclosure of expert testimony.**

"[A] party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence."  Fed. R. Civ. P. 26(a)(2)(A).  A party's disclosure of expert opinions must "be accompanied by a written report prepared and signed by the witness."  Fed. R. Civ. P. 26(a)(2)(B).  In addition,

- 4 -

> [t]he report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Id.  "Rule 26 promotes fairness both in the discovery process and at trial . . . [D]iscovery must not be allowed to degenerate into a game of cat and mouse."  Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992) (further stating that Rule 26 increases the quality of trial by better preparing attorneys for cross-examination, supplying a helpful focus for the court's supervision of the judicial process and minimizing surprise).  Thus, "[t]he purpose of a 'detailed and complete' expert report ... is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial."  Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico, 248 F.3d 29, 35 (1st Cir. 2001) (citations omitted).

1.      Rule 26(a)(2) and 37(c)(1)

Failure to comply with Rule 26(a)(2) creates a self-executing penalty that precludes the non-compliant party from using at trial any expert testimony that was untimely or incomplete. Fed. R. Civ. P. 37(c)(1) provides, in pertinent part, that:

- 5 -

> A party that without substantial justification fails to disclose information required by Rule 26(a) … is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.  In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.   In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Rule 37(c)(1) is a "self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision [37](a)(2)(A)."  Fed. R. Civ. P. 37, Advisory Committee's Notes.  Enforcement is thus automatic and mandatory unless the non-compliant party can show that "substantial justification" exists for its violation of Rule 26(a)(2) or that its failure was "harmless" to the opposing party.  Norris v. Murphy, 2003 WL 21488640 (D. Mass.) (June 26, 2003) attached hereto as Exhibit 1.

Pursuant to Rule 37(c)(1), "the required sanction in the ordinary case is mandatory preclusion."  Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998) (the rule "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule..."); see also Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 19-20 (1st Cir. 2001)(Rule 37(c)(1) requires "the near automatic exclusion of Rule 26 information that is not timely disclosed"); Lohnes v. Level 3 Communications, Inc., 272 F.3d 49, 60 (1st Cir. 2001) (Rule 26 "expert disclosure requirements are not merely aspirational, and courts must deal decisively with a party's failure to adhere to them").  The "adoption of Rule 37(c)(1) in 1993

- 6 -

gave teeth to a significantly broadened duty to comply with case management orders, and mandatory preclusion [is] the required sanction in the ordinary case." <u>See</u> <u>Primus v. United States</u>, 389 F.3d 231, 234-35 (1st Cir. 2004)(citations and footnote omitted).

      **B. Summary judgment is appropriate due to plaintiff's failure to present a genuine issue of material fact regarding the subject vehicle's alleged defect as well as a causal link between that defect and her alleged injuries.**

Under Rule 56(c), DaimlerChrysler Corporation is entitled to summary judgment if the record shows "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden, which may be discharged by pointing to the absence of adequate evidence supporting the nonmoving party's case." <u>Michelson v. Digital Fin. Serv.</u>, 167 F.3d 715, 720 (1st Cir. 1999); <u>see</u> <u>also</u> <u>Mass Cash Register, Inc. v. Comtrex Sys. Corp.</u>, 901 F. Supp. 404, 415 (D. Mass. 1995).  The burden then shifts to the opponent to show that a fact issue exists that is both "material" and "genuine." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Mass Cash Register</u>, 901 F.Supp. at 415.  "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the

- 7 -

governing law if the dispute over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of a nonmoving party." Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001).  Plaintiff "may not rest upon mere allegations, but must set forth specific facts showing that there is a genuine issue for trial." Michelson, 167 F.3d at 720.  Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

"To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact." Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001), citing Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000).  The mere possibility of such a fact is not enough. "[W]hen the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." Ricci v. Alternative Energy Inc., 211 F.3d 157, 162 (1st Cir. 2000), citing Restatement (Second) of Torts § 433B cmt. a.

      1.  In the absence of qualified expert testimony demonstrating a specific alleged defect, plaintiff cannot make a showing sufficient to establish the essential elements of her claims.

- 8 -

In this products liability action, the plaintiff must establish at least two essential elements: (1) the existence of a defect in the vehicle at the time of manufacture and sale attributable to negligence and/or breach of warranty on the part of DaimlerChrysler Corporation, and (2) a chain of causation between the alleged defect and the plaintiff's injuries.  See Gynan v. Jeep Corp., 13 Mass.App.Ct. 504, 508 (1982).  Without expert testimony, plaintiff cannot make this showing.  Summary judgment is therefore appropriate.

Absent expert testimony proving some specific alleged defect, plaintiff cannot establish the essential elements of her negligence and breach of warranty claims. See Celotex, 477 U.S. at 317.  The subject vehicle "is not a simple device [but r]ather a product consisting of a number of relatively complex working parts."  See Makuc v. American Honda Motor Co., 835 F.2d. 389, 392 (1st Cir. 1987), citing Calvanese v. W.W. Babcock Co., Inc., 10 Mass.App.Ct. 726, 734 n.9 (1980) (in the context of an allegedly defective motorbike).  Defect allegation necessarily raises issues of design and engineering principles that are beyond virtually any lay juror's general knowledge.  See Paul J. Liacos, Handbook of Massachusetts Evidence, §7.6 at 386 (7th ed. 1999) and cases cited therein (noting that "[f]indings of fact as to technical matters beyond the scope of ordinary experience are not warranted in the absence of expert testimony supporting such findings").  Because common experience in no way suggests that the plaintiff's injuries were caused by a defect in the area under the subject vehicle's steering column that existed from the time of the vehicle's manufacture or sale, expert testimony is required to prove the existence of the alleged defect.  See Restatement (Second) of Torts §328D comment d (1965).

- 9 -

Similarly, plaintiff's claim that she suffered injuries due to an alleged defect in the subject vehicle cannot survive without expert testimony as to causation, as her allegations raise issues of occupant kinematics, biomechanics, injury causation, and crashworthiness.  In this latter area – crashworthiness – plaintiff must establish through competent expert testimony that she sustained injuries beyond those which she might otherwise have sustained in the absence of a defect.

    2.    <u>The plaintiff has failed to produce any expert testimony to support her claims of product defect or injury causation, and summary judgment is therefore appropriate.</u>

Summary judgment is appropriate in this case because plaintiff has failed to present any expert testimony whatsoever to support her claims of a defect, let alone to establish that any defect in the subject vehicle caused or contributed to her alleged injuries.  Plaintiff did not provide either expert designations or expert reports by the respective deadlines of August 31, 2006 and September 29, 2006 established by Court Order following a May 9, 2006 Scheduling Conference, <u>see</u> 56.1 Statement at ¶¶ 3 and 4.  Evidently plaintiff believes this case to fall within the category of cases where expert testimony is not required.  That is not true.

Even if plaintiff were suddenly to accept the reality that expert testimony is necessary, that realization would come too late to salvage her case.  In light of the allegations raised, plaintiff's failure to provide DaimlerChrysler Corporation with any information whatsoever regarding any expert or experts by the Court's deadlines would entitle the defendant to

- 10 -

preclusion of that evidence should the plaintiff later attempt to submit an untimely expert disclosure and/or report.  See Santiago-Diaz v. Laborotorio Clinico y de Referencia del Este and Sara Lopez, M.D., 456 F.2d 272 (1st Cir. 2006) (internal citations omitted) (affirming dismissal under Fed. R. Civ. P. 41(b) due to plaintiff's failure to submit expert disclosures in accordance with court-imposed case management order and Fed. R. Civ. P. 26(a)(2)).

Plaintiff cannot overcome the complete absence of expert evidence by arguing that the doctrine of *res ipsa loquitur* relieves her burden.  See Enrich v. Windmere Corp., 416 Mass. 883, 88 (1993).  Under that doctrine, the jury must be able to find, either by expert evidence or by its own common knowledge, that the mere occurrence of an event shows negligence as a cause of the accident and injuries. Id., citing Coyne v. John S. Tilley Co., 368 Mass. 230, 235, 331 N.E.2d 541 (1975).  Plaintiff must show that the accident and resulting injuries are of a kind that do not ordinarily occur unless the defendant was negligent in some respect, and that other responsible causes, including the conduct of the plaintiff and third parties, are sufficiently eliminated by the evidence.  Enrich, 416 Mass. at 88.

Plaintiff has done nothing to eliminate other responsible causes.  Id. It is clear based on plaintiff's own allegations that the defendant did not cause the alleged accident.  By plaintiff's own account, she was injured "when she was struck in the rear while operating her" vehicle.  See 56.1 Statement at ¶ 1, and Exhibit A thereto at ¶8.  There is no evidence regarding the cause of plaintiff's alleged injuries other than her bare allegations in  pleadings, statements that plaintiff may have made to health care providers during treatment, and her own self-serving deposition

- 11 -

testimony.  None of this evidence is sufficient to eliminate other responsible causes, or to get this case to a jury.

The only evidence in the record which provides any explanation whatsoever for the plaintiff's claims consists of the allegations in her own pleadings and her own self-serving statements.  Not surprisingly, plaintiff admitted in deposition that she has never taken a course in mechanical engineering, that she has never designed an automobile and that she does not hold herself out as having expertise in mechanical engineering or automobile design.  Evidence given by a layperson such as the plaintiff is no substitute for expert testimony, where "nothing contained in the plaintiff's materials (depositions or affidavits) would permit a jury to find of its own knowledge" that the area below the subject vehicle's steering column was defective or that such a defect caused or contributed to her alleged injuries.  See Enrich, 416 Mass. at 87-88; Morrell v. Precise Engineering, Inc., 36 Mass.App.Ct. 935, 936 (1994).

Plaintiff's claims of injury causation require testimony supported by specialized knowledge in that area.  See Makuc, 835 F.2d. at 392 (internal citations omitted) (holding that expert testimony was required to establish a causal link between a motorbike and the plaintiff's injuries because the subject motorbike's "sophistication precludes the jury from drawing an inference of causation based on common knowledge").   Courts in Massachusetts have specifically "recognized the necessity for expert medical testimony on highly technical medical issues, such as injury causation . . . " Lally v. Volkswagen Aktiengesellschaft, 45 Mass.App.Ct. 317, 324-25 (1998)(multiple cases decided in "our appellate courts and those in other

- 12 -

jurisdictions have recognized the necessity for expert testimony on highly technical medical issues, such as injury causation and enhancement of injuries"); see also Casey's Case, 348 Mass. 572, 574 (1965) (expert testimony required in disability case involving aggravation of disc injury); Held v. Bail, 28 Mass.App.Ct. 919, 921 (1989)(when "the causation question involves questions of medical science or technology, the jury requires the assistance of expert testimony").  There is no evidence that plaintiff has any expertise in medical science or technology that would qualify her to give testimony in the area of injury causation.

Because a jury could not legally find, more probably than not, that a defect which existed in the subject vehicle at the time it was manufactured and sold caused or contributed to the plaintiff's alleged injuries, a verdict for the plaintiff in these circumstances would be wholly speculative and conjectural, and summary judgment for DaimlerChrysler Corporation is appropriate.  See Ricci, 211 F.3d at 162 (internal citations omitted).

## III.    CONCLUSION

WHEREFORE, in accordance with Fed. R. Civ. P. 26(a)(2) and Fed. R. Civ. P. 56(c), DaimlerChrysler Corporation submits that plaintiff cannot bear her burden of proof concerning the essential elements of her negligence and breach of warranty claims and therefore has no reasonable expectation of proving her case at trial. Accordingly, the Defendant requests that summary judgment enter against the plaintiff on all Counts of her Complaint.

- 13 -

Respectfully submitted,

Defendant,
DaimlerChrysler Corporation,
By its attorneys,


/s/  Peter M. Durney_____
Peter M. Durney, BBO # 139260
        PDurney@cornellgollub.com
James P. Kerr, BBO # 564538
        JKerr@cornellgollub.com
CORNELL & GOLLUB
75 Federal Street
Boston, MA 02110
(617) 482-8100


## CERTIFICATE OF SERVICE

I, Peter M. Durney, attorney for the defendant, DaimlerChrysler Corporation, hereby certify that on the 13th day of November, 2006, a true copy of the foregoing Memorandum of Law in Support of Defendant DaimlerChrysler Corporation's Motion to Preclude Expert Testimony and for Summary Judgment, will be filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be served via first-class mail, postage prepaid, upon anyone indicated as a non-registered participant, including:

Jennifer M. Lamanna, Esq.
ERCOLINI & LAMANNA
380 Pleasant Street, Suite 2-4
Malden, MA  02148


/s/  Peter M. Durney_____
Peter M. Durney

Not Reported in F.Supp.2d, 2003 WL 21488640 (D.Mass.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,D. Massachusetts.
Danny NORRIS, Plaintiff,
v.
Michael MURPHY, Defendant.
No. Civ.A. 00-12599-RBC.
June 26, 2003.

Myong J. Joun, Howard Friedman Law Offices, Boston, MA, Lead Attorney, Attorney to be Noticed, representing Danny Norris, (Plaintiff).
Susan M. Weise, City of Boston Law Department, Boston, MA, Lead Attorney, Attorney to be Noticed, representing Michael Murphy, (Defendant).

*MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANT'S EXPERT WITNESS, DR. MICHAEL KENNEDY, FROM TESTIFYING (# 32, filed 6/2/2003)*

COLLINGS, Magistrate J.

### I. The Legal Framework

*1 On December 1, 1993, the Federal Rules of Civil Procedure were amended to provide for a greater degree of pretrial disclosure with respect to experts who were to testify at trial and to require the disclosures no less than ninety (90) days before trial. Rule 26(a)(2), Fed.R.Civ.P. The necessity for the increased disclosure and its timing was stated quite succinctly by the Advisory Committee when it wrote that "[t]his paragraph imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross-examination ···". Fed.R.Civ.P. 26(a)(2), Advisory Committee Notes, 1993 Amendment, 146 F.R.D. 633. See Ortiz-Lopez v. Sociedad Espanola De Auxilio Mutuo Y Beneficiencia de Puerto Rico, 248 F.3d 29, 35 (1 Cir., 2001).

The amended Rule 26(a)(2) required first that the identity of expert witnesses be disclosed. Rule 26 (a)(2)(A), Fed.R.Civ.P. Second, the Rule mandated that the disclosure of the identity of expert witnesses:

··· be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the last ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Rule 26(a)(2)(B), Fed.R.Civ.P. (emphasis added).

While the Rule does not specify what should be in the "listing of other cases," the cases have emphasized that the key is whether sufficient information is provided so that the opposing party's counsel can procure copies of the deposition or trial testimony. Coleman v. Dydula, 190 F.R.D. 316, 318 (W.D.N.Y., 1999) citing Majewski v. Southland Corp., 170 F.R.D. 182, 185 (D.Kan., 1996); Nguyen v. IBP, Inc., 162 F.R.D. 675, 682 (D.Kan., 1995). In the Nguyen case, the Court wrote that: The information required to be disclosed are "cases" in which the witness has testified. The identification of "cases" at a minimum should include the courts or administrative agencies, the names of the parties, the case number, and whether the testimony was by deposition or at trial. Such information would be sufficient to allow a party to review the proceedings to determine whether relevant testimony was given. With this information, a party should be able to determine the type of claim presented and locate any recorded testimony.

Nguyen, 162 F.R.D. at 682.

The sanction for failing to comply with the expert disclosure mandates of Rule 26(a)(2), Fed.R.Civ.P., are found in Rule 37(c)(1), Fed.R.Civ.P., which provides:

*2 A party that without substantial justification fails to disclose information required by Rule 26(a) ··· is not, unless such failure is harmless, permitted to use at trial ··· any witness or information not so disclosed.

Rule 37(c)(1), Fed.R.Civ.P.

Thus, "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." Salgado v. General Motors Corp., 150 F.3d 735, 742 (7 Cir., 1998) citing Finley v. Marathon Oil Co., 75 F.3d 1225, 1230 (7 Cir., 1996).

## II. The Motion to Exclude

In the instant case, plaintiff brings claims under 42 U.S.C. § 1983, Mass.Gen L. c. 12, § 11I and common law alleging, inter alia, that the defendant, a Boston Police officer, used excessive force upon his person during the course of his arrest on December 23, 1999, thereby causing physical injury. There is a disputed issue as to whether or not Officer Murphy's acts (which plaintiff claims amounted to excessive force) caused the physical injury of which plaintiff now complains. The plaintiff will call one or more experts who will testify that they did; the defendant identified Dr. Michael G. Kennedy of Natick, Massachusetts, an orthopedic surgeon, as their expert who undoubtedly will opine that they did not.

Trial in the case had been scheduled for June 23, 2003; this date was set on March 27, 2003. On June 3, 2003, some twenty days before trial, plaintiff filed a motion to preclude Dr. Kennedy from testifying [FN1] on the grounds that the defendant has failed to provide in Dr. Kennedy's report "··· a listing of any other cases in which [Dr. Kennedy had] testified as an expert at trial or by deposition within the preceding four years" as required by Rule 26(a)(2)(B), Fed.R.Civ.P.

> FN1. The full title of the motion is "Plaintiff's Motion In Limine to Preclude Defendant's Expert Witness, Dr. Michael Kennedy, from Testifying."

## III. Discussion

Manifestly, Dr. Kennedy's report and subsequent submission fail to comply with Rule 26(a)(2)(B). In a letter to counsel for the defendant dated May 13, 2003,[FN2] Dr. Kennedy did provide some information (which, in turn, was turned over to plaintiff's counsel) but the disclosure is woefully inadequate.

> FN2. # 33, Ex. 1.

In the letter, Dr. Kennedy states that "[e]xcept for testifying in cases in Federal Court, I did not keep a list of non-federal cases in which I testified at trial, by deposition or arbitration until January, 2002." (# 33, Ex. 1.) First, the obvious defect is that the letter only lists cases since January, 2002 despite the fact that it appears from the statement that Dr. Kennedy did keep a list of federal cases in which he testified before that date.[FN3]

> FN3. It is unclear whether the testimony in the four federal cases listed in the letter occurred after or before January, 2002.

Second, Dr. Kennedy lists four federal cases in which he testified as an expert; however, he gives only the name of the cases and no other information whatsoever. There is no indication as to what district the cases were pending in, what the docket numbers were or what attorney retained him. It is virtually impossible for plaintiff's counsel to locate the court files and obtain any information with just case names.[FN4]

> FN4. For example, the undersigned ran the names through the "query" function of the Court's CM/ECF system and was not able to determine whether the cases had been

pending in the District of Massachusetts.

**\*3** Third, the situation is even worse with respect to non-federal cases. Dr. Kennedy lists twenty cases which are either "non-federal trial(s), depositions or arbitrations" [FN5] Once again, only case names are given. In one instance, only one name of one of the parties is listed. Beyond that, there is no breakdown of which cases were trials, which were depositions and which were arbitrations. It is impossible to tell in what state (and what court within a state) the trials or depositions were held. No location is given for any of the arbitrations.

FN5. # 33, Ex. 1.

In addition, Dr. Kennedy has some familiarity with federal court practice. In his deposition in the Vermont case on May 3, 2000, he testified as follows:
Q. Have you ever testified in Federal Court?
A. Yes.
Q. When was that?
A. I think the last was about four weeks ago and they asked me for the last five years and I think-or ten years, and I think there was [sic] four cases.
# 33, Ex. 2, p. 9. [FN6]

FN6. Dr. Kennedy's testimony might indicate that he is of the mistaken belief that the only list he need disclose is a list of his testimony in prior Federal cases. This is erroneous. Even so, just producing the names of the four federal cases is patently insufficient to satisfy the disclosure requirements.

If he knew in early 2000 that as a matter of federal practice, he was required to disclose a list of all the cases in which he had testified, his failure to comply in the instant federal court case is baffling. Counsel for the plaintiff, evidently through his own initiative, was able to obtain two deposition transcripts of Dr. Kennedy's testimony in July, 2002 (# 33, Ex. 2) and May, 2000 (# 33, Ex. 3). [FN7] The July, 2002 deposition focused almost entirely on the income Dr. Kennedy received conducting independent medical examinations and testifying at depositions and trials as an expert witness. At the deposition, he had no records from which he could discern the amount of income he received for "medical, legal evaluations, and/or examinations, and/or trial or deposition for the years 1998 through 2001," there was no source whatever from which he could get that knowledge, he kept no records from which he could find the information, and since his testimony in an unrelated proceeding on December 13, 2001, he had not "··· set up a system to start maintaining any such records" and had not instructed anyone to do so. (# 33, Ex. 2, pp. 6-8) Further, he testified that he had not "changed anything concerning the method by which [he] keep[s] track of monies billed and monies generated for medical, legal work since ···" the December 13th deposition, had not instructed his secretary to change her methods of record keeping and "absolutely" had not instructed his accountant to do anything differently to insure that he would know how much he earned for this work. (Id. at p. 17)

FN7. The May, 2000 deposition was taken in a case pending in the state courts of Vermont. Since it appears that Dr. Kennedy testifies in state courts (and perhaps arbitrations) pending in states other than Massachusetts, it is virtually impossible to locate transcripts with just the names of the cases.

Having found that the defendant has failed to comply with the requirements of Rule 26(a)(2)(B), Fed.R.Civ.P., the next issue is whether the failure to comply is "without substantial justification" and if so, whether "the failure is harmless." Rule 37(c)(1), Fed.R.Civ.P. The defendant does not attempt to argue that the failure was substantially justified. See # 38. Indeed, on these facts, the argument would be without merit. To my mind, there are only two possible reasons why Dr. Kennedy failed to comply. The first is that he patently (and with some degree of arrogance) refuses to keep the records which would enable him to comply. This is hardly "substantial justification." An expert cannot deliberately put himself or herself in the position where it is impossible to comply with a rule and then

claim that he or she cannot comply. Self-induced inability to comply with a rule is simply not justified. *4 An expert's failure to maintain records in the ordinary course of his business sufficient to allow disclosures to be made, does not constitute "substantial justification" for the failure to provide required disclosures as to any retained expert expected to testify at the trial of the case. Nguyen, 162 F.R.D. at 681.

The second possible reason why Dr. Kennedy may be unable to comply is that the information is available but that he cannot be bothered to be put to the task of doing the digging necessary to discover the information. It simply strains credulity that Dr. Kennedy does not have records of medical evaluations which would contain information from which he could discern the court and its location, or the location of arbitrations, in which he has testified about those evaluations. Nguyen, 162 F.R.D. at 680-1. At the very least, if he does not have diaries, he should have some independent memory of the courts in which he has appeared during the last fifteen months. Lastly, it is very hard to credit Dr. Kennedy's statement that his accountant, who prepares his taxes, disposes of the 1099s Dr. Kennedy receives for this work after the taxes are filed, especially since taxpayers are subject to audits for a number of years after filing. If there are records from which the information may be gleaned, a failure to procure the records to find out the information is not a justification for non-compliance with the disclosure mandated by the rule.

Defendant's argument that the failure is "harmless" centers on the fact that the plaintiff has procured two depositions of Dr. Kennedy, one of which (# 33, Ex. 2) is devoted almost entirely to obtaining testimony of the amount Dr. Kennedy received from performing independent medical evaluations and testifying at trials and depositions. While I would agree that perhaps the deposition is sufficient for the plaintiff to cross-examine Dr. Kennedy on that issue, the disclosure requirement was not imposed for the sole purpose of learning how much money an expert earned from testifying. It was also imposed so that opposing counsel could learn the substance of the testimony which the expert gave in other cases, including the specific opinions he has given on matters which may be substantially similar to the opinions he proposes to render in the case at hand. If he has rendered different opinions on substantially similar diagnoses, that fact could be effective ammunition for cross-examination. In addition, reading the cross-examination by other lawyers can provide counsel with avenues of questioning in the case at hand, avenues which counsel may not have thought of had he not had the benefit of the prior testimony.

If an expert in his report provided a partial list of a significant number of cases (together with the necessary identifying data) in which he had testified, the Court might be inclined to find the failure to provide a complete list as "harmless" on the theory that the opposing counsel was given a fair opportunity to obtain a substantial amount of former testimony. But that is not this case-what Dr. Kennedy provided was inadequate for opposing counsel to procure any of Dr. Kennedy's former testimony. In this connection, it should be noted that the two cases in which plaintiff's counsel was able to procure deposition testimony were not among the cases listed in Dr. Kennedy's May 13th letter. (# 33, Ex. 1).

*5 On the record before me, the failure to comply cannot be found to have been "harmless." The bottom line is that experts such as Dr. Kennedy should not be offering their services as testifying experts in federal court unless they are fully prepared to comply with the disclosure requirements of Rule 26(a)(2)(B), Fed.R.Civ.P. And attorneys should not retain experts to testify in federal court without obtaining, at the outset, assurances that the expert has the information at his disposal which is required to be included in the expert report required by that rule.

IV. Conclusion and Order

The defendant has failed to comply with Rule 26(a)(2)(B), Fed.R.Civ.P. The failure to comply was "without substantial justification" and was not "harmless." Rule 37(c), Fed.R.Civ.P. In these circumstances, the exclusion of the expert's testimony is mandatory. Id. If I have discretion to impose a different sanction short of exclusion, Ortiz-Lopez, 248 F.3d at 35; Samos Imex Corp. v. Nextel Communications, Inc., 194 F.3d 301, 305 (1 Cir., 1999), I do not, on the present record, find an appropriate lesser sanction. Accordingly, it is ORDERED that Plaintiff's Motion In Limine to Preclude Defendant's Expert Witness, Dr. Michael Kennedy, from Testifying (# 32) be, and the same hereby is, ALLOWED.

Copr. (C) West 2006 No Claim to Orig. U.S. Govt. Works D.Mass.,2003.
Norris v. Murphy
Not Reported in F.Supp.2d, 2003 WL 21488640 (D.Mass.)

Motions, Pleadings and Filings (Back to top)

- 1:00CV12599 (Docket) (Dec. 21, 2000)
END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.