## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

C.A. NO.: 05-11679-JLT

| | |
|---|---|
| **DEBORAH SIROTKIN BUTLER** | * |
| **Plaintiff** | * |
| | * |
| **v.** | * |
| | * |
| **DAIMLERCHRYSLER CORP.** | * |
| **Defendant** | * |

## PLAINTIFF DEBORAH SIROTKIN BUTLER'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Deborah Sirotkin Butler respectfully submits the following Opposition to the Defendant's Motion for Summary Judgment. For the reasons set forth below, the Defendant's Motion for Summary Judgment should be denied, and this case allowed to proceed to trial before a jury on all counts.

I. STATEMENT OF THE CASE

This is a products liability action arising out of a rear-end collision involving the Plaintiff, Mrs. Butler, and a non-party, Charlotte Sanford. Mrs. Butler leased a 2000 Dodge Neon, designed and manufactured by the Defendant, DaimlerChrysler Corp., and was operating that vehicle when she was struck in the rear by the vehicle operated by Ms. Charlotte Sanford. See Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("Plaintiff's Rule 56.1 Statement"), ¶ 2. The 2000 Dodge Neon consists of the PL-class body type manufactured by Chrysler. Plaintiff's Rule 56.1 Statement, ¶3 Underneath the steering column of the vehicle are several openings in the dashboard material for bolts and other hardware, including an opening which allows the movement of a lever used when the steering column is adjusted. Plaintiff's

Rule 56.1 Statement, ¶4.  There is no protective covering over this lever and no protective covering over the exposed bolts and hardware.  Plaintiff's Rule 56.1 Statement, ¶¶ 6, 7.

Mrs. Butler stands only four feet ten inches tall, and, in order to operate the vehicle, needed to advance the driver's seat to the forward-most position on the track.  Plaintiff's Rule 56.1 Statement, ¶ 7  Mrs. Butler did not modify the seat track of the vehicle in any way, and she did nothing to modify the way in which she operated the vehicle other than to move the seat as far forward as possible.  Plaintiff's Rule 56.1 Statement, ¶ 8  As a result of the collision with Ms. Sanford, Mrs. Butler was propelled forward into the area under the steering column.  Affidavit of Deborah Sirotkin Butler ("Butler Affidavit"), ¶2  Mrs. Butler's left knee came into contact with a sharp object under the steering column.  Butler Affidavit, ¶ 3  Mrs. Butler sustained serious injuries to her left knee as a result of her collision with the exposed components under the steering column of her vehicle.  Butler Affidavit, ¶ 10-14

At the time Chrysler designed, tested and manufactured the 2000 Dodge Neon, Chrysler did not utilize 5th percentile female dummies, and, as a result, had absolutely no data reflecting the safety of its design for individuals below the size of the 50th percentile hybrid male.  Plaintiff's Rule 56.1 Statement, ¶¶ 9  Despite creating a designated seat track position that placed an operator of Mrs. Butler's size in the position of being exposed to contact with uncovered metal and hardware, Chrysler provided the operator with no warnings regarding the use of this seat track position.  Plaintiff's Rule 56.1 Statement, ¶ 11  Mrs. Butler contends that because she could not operate the vehicle without this risk, the vehicle is not fit for the purpose for which it was marketed by Chrysler and purchased by Mrs. Butler.

## II. SUMMARY JUDGMENT STANDARD

The Defendant's burden on a motion for summary judgment is to demonstrate that proof of an essential element of the Plaintiff's claim is unlikely to be forthcoming at trial.

Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), and that they are entitled to judgment in their favor as a matter of law.  O'Rourke v. Hunter, 446 Mass. 814, 821 (2006); Anderson St. Assoc. v. Boston, 442 Mass. 812, 816 (2004).

The Plaintiff's burden, on the other hand, "is not to prove its case at summary judgment but to raise a genuine issue of material fact" for trial or to show that allowance of summary judgment in the Defendant's favor would be incorrect as a matter of law.  O'Rourke, at 821-822. Somerset Savings Bank v. Chicago Title Insurance Co., 420 Mass. 422, 426-427 (1995

Accordingly, this Court will "ask [it]self not whether  [it] thinks that the evidence unmistakably favors one side or the other but whether a fair-minded [fact finder] could return a verdict for the [Plaintiff] on the evidence presented."  Fleshner v. Technical Communications Corp., 410 Mass. 805, 809 (1991) quoting Anderson v.  Liberty Lobby, Inc. 477 U.S. 242, 252 (1986).  The Court's mere speculation that the Defendants may prevail at trial is not a sufficient basis for the allowance of summary judgment in their favor.   Id. , citing Byrd v. Roadway Express, Inc., 687 F.2d 85, 87 (5th Cir. 1982)  Any doubt as to the existence of a genuine issue of material fact must be resolved against the Defendant, the party moving for summary judgment. Madden v. Estin, 28 Mass.App.Ct. 392, 394 (1990), citing Gross v. Southern Ry., 414 F.2d 292, 297 (5th Cir. 1969).

## III.  ARGUMENT

**There exists a genuine issue of material fact as to the alleged defect in the 2000 Dodge Neon, and as to the causal link between that defect and Mrs. Butler's injuries.**

Mrs. Butler's own testimony and her documentary evidence in the form of her certified medical records are sufficient to establish the existence of the defect claimed and the chain of causation between this defect and her injuries.  As the Defendant correctly points out, in order for Mrs. Butler to succeed on her claims as to negligence and breach of warranty, she must establish at least two essential elements:  (1) the existence of a defect in the vehicle at the time of manufacture and sale attributable to negligence and/or breach of warranty on the part of DaimlerChrysler Corporation, and (2) a chain of causation between the alleged defect and the plaintiff's injuries. See Gynan v. Jeep Corp., 13 Mass.App.Ct. 504, 508 (1982).   Here, the

claimed defect is Chrysler's design of the instrument panel underneath the steering column, in the form of exposed bracketing and a lever to allow for adjustment of the steering wheel. While the 2000 Dodge Neon is, as Chrysler points out, "a product consisting of a number of relatively complex working parts," the defective part complained of by Mrs. Butler is not one of them.

A determination that there is the defect in the design of the Neon as alleged by Mrs. Butler does not require intimate knowledge or understanding of these "complex working parts." Rather, it requires an understanding of the difference between a hard surface and a soft surface, and the difference in sensation caused by colliding with a protruding object as opposed to a smooth surface. If the subject matter is capable of being readily understood without the assistance of an expert, then an expert's testimony may be unwarranted and therefore inadmissible. Coyle v. Cliff Compton, Inc., 31 Mass.App.Ct., 31 Mass.App.Ct. 744, 749-750, 583 N.E.2d 875, 878 (1992) Liability with respect to product design and warning may be established without an expert. Docanto v. Ametek, Inc., 367 Mass. 776, 782-783, 328 N.E.2d 873, 877 (1975) A jury could certainly find that Chrysler was negligent in its manufacture of an instrument panel that exposed an operator to a collision with protruding bolts and levers based upon their common experience and understanding. Jurors have a common understanding as to what the area under a steering column looks like, and it is not outside a layman's knowledge that this area is generally a smooth, covered surface, without protruding hardware.

Although it is expected that Chrysler will attempt to produce expert testimony to support its claim that the injury claimed by Mrs. Butler could not have been caused by the accident with Ms. Sanford, this is clearly an issue of fact which is both material and contested. Mrs. Butler is expected to testify that she was struck in the rear, and that she was propelled forward, causing her to come into contact with the steering wheel itself and with a sharp object under the steering

column.  She will  testify that she had not experienced any prior difficulty with her left knee, but that she immediately began experiencing pain and difficulty bearing weight on her leg after her collision with this sharp object.  While Chrysler intends to offer expert testimony to contradict or discredit Mrs. Butler's description of the accident and her observations as to the movements of her body and her physical sensations, Chrysler's expert's testimony is entitled to no greater weight than Mrs. Butler's at this stage in the proceedings.  "The law should not, and does not, give the opinions of experts on either side of  . . . [an] issue the benefit of conclusiveness, even if there are no contrary opinions introduced at the trial."  Commonwealth v. Lamb, 372 Mass. 17, 24, 360 N.E.2d 307, 312 (1977) quoting Commonwealth v. Smith, 357 Mass. 168, 178, 258 N.E.2d 13, 20 (1970).  It is for the jury to determine whether to credit Mrs. Butler's description of the accident and subsequent events, or to accept the testimony of Chrysler's proposed experts.  Although the opposing testimony as to these material facts will come from a layperson on one side and an expert on the other, a genuine issue nevertheless exists, and summary judgment for the Defendant cannot be appropriately granted.

IV.     <u>CONCLUSION</u>

For the reasons stated above, the Plaintiff respectfully requests that the court deny the Defendant's Motion for Summary Judgment, as a genuine issue of material fact exists as to both the existence of the defect in the 2000 Dodge Neon, and the link between the alleged defect and the claimed injuries, and, therefore, the Defendant is not entitled to judgment as a matter of law.

Respectfully submitted,
Deborah Sirotkin Butler,
By her attorney,

/s/ Jennifer M. Lamanna
Jennifer M. Lamanna, Esq.
BBO#637434
jenniferlamanna@verizon.net
ERCOLINI & LAMANNA

380 Pleasant Street, Suite 24
Malden, MA  02148
(781) 324-2425

**CERTIFICATE OF SERVICE**

I, Jennifer M. Lamanna, attorney for the Plaintiff, Deborah Sirotkin Butler, hereby certify
that on the 22nd day of December, 2006, a true copy of the foregoing Plaintiff's Opposition to
Defendant's Motion for Summary Judgment will be filed through the ECF system and sent
electronically to the registered participants as identified on the Notice of Electronic Filing and
paper copies will be served via first-class mail, postage prepaid, upon anyone indicated as a non-
registered participant, including:
Peter M. Durney, Esq., at PDurney@cornellgollub.com and
James, Kerr, Esq., at JKerr@cornellgollub.com

/s/ Jennifer M. Lamanna

Jennifer M. Lamanna, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. : 05-11679-JLT

DEBORAH SIROTKIN BUTLER
        Plaintiff,

v.

DAIMLERCHRYSLER CORPORATION
        Defendant.

**AFFIDAVIT OF PLAINTIFF DEBORAH SIROTKIN BUTLER IN SUPPORT OF HER OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Deborah Sirotkin Butler, under the pains and penalties of perjury, hereby depose and state:

1.      On October 7, 2002, I was operating a leased 2000 Dodge Neon, when I was struck in the rear by the vehicle operated by Ms. Charlotte Sanford.

2.      When my vehicle was hit, I felt myself move forward in the seat, and felt the steering wheel press into my stomach.

3.      I felt my left knee come into contact with a sharp protruding object under the steering column of my vehicle.

4.      Underneath the steering column of my vehicle were several openings in the dashboard material for bolts and other hardware.

5.      There was no protective covering over the exposed bolts and hardware.

6.      I am four feet ten inches tall, and, in order to operate the vehicle, I needed to advance the driver's seat to the forward-most position on the track.

7.      I did not modify the seat track of the vehicle in any way, and I did nothing to modify the way in which I operated the vehicle other than to move the seat as far forward as possible.

8.    I was not warned by any representative of Burlington Dodge or of DaimlerChrysler that there was any danger to operating the vehicle from the forewardmost track position.

9.    Other than sustaining a contusion to my left knee in another accident over a year before, I had never had any trouble with my left knee prior to the accident caused by Ms. Sanford.

10.    After the accident with Ms. Sanford, I experienced excruciating pain in my knee, including a feeling as if I had shards of glass inside my left knee joint.

11.    After the accident on October 7, 2002, I had difficulty bearing weight on my left leg due to the injury to my knee.

12.    All of my symptoms of pain and difficulty with weight bearing arose after the October 7, 2002 accident, in which I felt my knee strike a sharp object under the steering column of my Dodge Neon.

13.    I underwent a course of physical therapy and a series of medical evaluations to treat the injury to my left knee.

14.    I have been diagnosed with both a torn medial meniscus and a puncture of the posterior horn in my left knee.  These diagnoses are included in my medical records which have been produced to the Defendant.

15.    As a result of the knee injury I sustained in the October 7, 2002 accident, I sustained a significant loss in my income and my ability to take new clients in my private legal practice was severely curtailed.

16.    Although I admit that I am not a mechanical engineer or an automobile design expert, I am able to tell the difference between a smooth surface and a bumpy surface.

17.    Although I admit that I am not a mechanical engineer, I am able to tell the difference between a covered bolt and an exposed bolt.

18.     Although I admit that I am not a mechanical engineer, I am able to tell the difference between a hard surface and a soft surface.

Signed under the pains and penalties of perjury this twenty-first day of December, 2006,

/s/ Deborah Sirotkin Butler
Deborah Sirotkin Butler

76

1       a specific make and model or a body size or what?

2   A.  When I use the word product, I'm referring to a body

3       class designation.  So for instance, the Neon would have

4       been referred to as a PL body class, and whether the

5       vehicle was sold as a Dodge Neon or a Plymouth Neon or a

6       Chrysler Neon, if there is such a thing, it would have

7       been a PL family of vehicles, the PL product.

8   Q.  So if I wanted to question somebody about the ride and

9       drive evals done for the Dodge Neon, I'd be looking for

10      the person who conducted -- the vehicle development

11      synthesis manager working on the PL body class?

12  A.  That's right.

13  Q.  Do you happen to know who that is?

14  A.  I do not know who that is.

15  Q.  Looking now specifically at your experience and

16      expertise as a safety development engineer and a product

17      development specialist, when dealing with the instrument

18      panel in a vehicle, did you focus specifically on the

19      instrument panel in the body classes that you've just

20      mentioned, the Pacifica and the minivan, or did you work

21      on other body classes?

22  A.  I focused specifically on minivan and Pacifica.

23  Q.  Is there somebody who works for DaimlerChrysler whose

24      expertise or experience in safety development and

25      product development would be focused on the PL class?

1  A.   Yes.  What I'm seeing here is a very small cutout or a

2       small match where the upper left corner of that panel

3       has been removed to allow the tilt release lever to

4       rotate down in its fully unlatched position.

5  Q.   So when you say a cutaway, it's a section of the knee

6       blocker that has been removed?

7  A.   When I say cutaway, it's referring to a notch or an

8       opening or a clearance feature in the knee blocker to

9       allow another component to move into that area.

10  Q.   And that material that you just described for me that

11      comprises the knee blocker in the Neon, that

12      energy-absorption material, would not be present in that

13      particular space that we're talking about right now,

14      that cutaway?

15  A.   That's correct, yeah, because the material has been

16      removed in that particular area, yes.

17  Q.   Can you tell me what material is left?

18  A.   There's no material in that particular space.

19  Q.   What is the -- it's the tilt column lever that we've

20      been describing, what is that made of?

21  A.   The tilt column lever is made of metal, and it typically

22      resides when the column is in the latch position or the

23      typical use position.  The tilt column lever would

24      reside up close to the steering column itself, to the

25      left side or to the outboard side of the steering column

104

```
 1        making an estimate as to where on the track the seat is?
 2   A.   It's hard for me to say with any degree of precision.  I
 3        would say this is probably not full forward, because I
 4        would expect this dummy's knees to be very close to the
 5        instrument panel in a full forward seated position.  So
 6        I think it's something other than that, but I can't tell
 7        you is it midtrack, is it full rear?  That is just
 8        difficult to determine.
 9   Q.   Now, with regard to the new testing that's being done
10        under 208 since September of 2003, are you aware of
11        whether or not that new testing is being done on the PL
12        class vehicle?
13   A.   That new testing would not apply to the PL vehicle
14        because the PL has gone out of production and has been
15        replaced by another compact vehicle.
16   Q.   So to your knowledge, there are no photographs, for
17        example, that I could view showing a 5th percentile
18        female dummy in a PL class for purposes of 208 testing?
19   A.   There are no such tests that I'm aware of.  I can't tell
20        you whether or not that test has ever been done, but I'm
21        just not aware of any such testing.
22   Q.   That's all I'm asking, to your knowledge whether or not
23        that's happened.
24             In preparation for this deposition or at any
25        other time, do you recall having viewed any photographs
```

1        panel is showing because the photograph is very dark,

2        but it appears to me to be a Dodge Neon.

3    Q.  With the understanding it's not the greatest quality

4        photograph, is there anything about this first picture

5        that I'm showing you that strikes you as being different

6        from the instrument panel of a Neon that you're familiar

7        with?

8    A.  No.  There's nothing that I see here that would be

9        different.

10   Q.  You don't -- there's nothing -- there's no modification

11       that jumps out at you, doesn't appear to have been

12       altered in any way from what you can see in these

13       photographs?

14   A.  That's a fair statement.

15   Q.  Can you see right here, I'm pointing to an item that is

16       reflecting a light in front of the knee of the occupant

17       in this photograph?

18   A.  Yes, I see that.

19   Q.  Can you -- Do you know what that is, that object is,

20       that we're looking at?

21   A.  I believe this would be the left outboard edge of the

22       driver knee blocker panel itself, and I believe there is

23       a small cutaway in the driver knee blocker to allow the

24       tilt steering column lever to fully rotate and pivot at

25       its joint.