UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 05-11679-JLT

DEBORAH SIROTKIN BUTLER
Plaintiff,

v.

CHRYSLER CORPORATION
Defendant.

**DEFENDANT DAIMLERCHRYSLER CORPORATION'S**
**REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant DaimlerChrysler Corporation ("the defendant") respectfully submits this Brief in Reply to Plaintiff's Opposition to DaimlerChrysler Corporation's Motion for Summary Judgment ("Defendant's Motion").

## I. INTRODUCTION

The defendant filed a Motion to Preclude Expert Testimony and for Summary Judgment on November 13, 2006. Plaintiff failed to file opposition papers within the fourteen (14) days required by Local Rule 7.1(B)(2). However, on December 12, 2006 the Court extended to December 22, 2006 the time for plaintiff to file a response to the defendant's Motion. The Court also gave the defendant a due date of January 5, 2007 by which to file a Reply. See Court's Order dated December 12, 2006, attached hereto as Exhibit A.

The facts material to this motion were set forth in the defendant's Rule 56.1 Statement of Undisputed Material Facts, which was filed with the present Motion on November 13, 2006. Those facts are as follows:

1. Plaintiff filed her Complaint against DaimlerChrysler Corporation on August 12, 2005 in the United States District Court for the District of Massachusetts, alleging that "[t]he design of the [subject 2000 Dodge Neon] under the steering column is such that an individual operating the vehicle with the seat moved forward is placed at risk of serious injury in the event of a collision."

2. Plaintiff claims that she "sustained severe injuries when she was struck in the rear while operating her 2000 Dodge Neon and was thrown into the unnecessarily hard and unyielding material located under the steering column of the vehicle." DaimlerChrysler Corporation denied these allegations in its answer, dated September 2, 2005.

3. Plaintiff testified at deposition that she has never taken a course in mechanical engineering, has never designed an automobile and does not hold herself out as having any expertise in mechanical engineering or automobile design.

4. At the Scheduling Conference held on May 9, 2006, the Court set a deadline of August 31, 2006 for the Plaintiff to "file expert designations," and a deadline of September 29, 2006 to "file expert reports."

5. Plaintiff did not meet the August 31, 2006 deadline set by the Court in the Scheduling Order. The Plaintiff did not provide any expert designation of any kind to DaimlerChrysler Corporation prior to or on August 31, 2006.

6. Plaintiff did not meet the September 29, 2006 due date set by the Scheduling Order. The Plaintiff did not provide any expert report of any kind to DaimlerChrysler Corporation prior to or on September 29, 2006.

Local Rule 56.1 requires in relevant part that the opponent provide "a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried…". Plaintiff has made no effort to controvert the facts stated by the defendant, and has actually conceded the truth of the facts stated by the defendant. Furthermore, plaintiff has failed to provide any statement of materials facts as to which she contends there is a genuine issue to be tried. "Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." Local Rule 56.1 As plaintiff does not dispute these facts, they must be deemed admitted.

Moreover, the Court's December 12, 2006 Order allowed in part the defendant's Motion to Preclude Expert Testimony and for Summary Judgment. Exh. A at Paragraph 2. Plaintiff is therefore barred from presenting any expert testimony in support of her allegations.

The allegations contained in plaintiff's Affidavit and in the document entitled Plaintiff Deborah Sirotkin Butler's Rule 56.1 Statement of Undisputed Material Facts in Support of Her

Opposition to Defendant's Motion for Summary Judgment do not merit the Court's consideration. Absent expert testimony, none of plaintiff's statements or the purported evidence plaintiff cites can have any relevance to the matter of law addressed in the Defendant's Motion: plaintiff's failure to present competent evidence in support of her product liability claims. They amount to nothing more than an elaboration of the plaintiff's claims as alleged in her complaint. They are insufficient by themselves to establish either a defect in the subject vehicle or any connection between an alleged defect and the injuries plaintiff claims to have suffered, and ought to be disregarded.

## II. ARGUMENT

In the absence of expert testimony, plaintiff cannot meet her burden of proof under Massachusetts product liability law. It is essential that the plaintiff establish that a defect existed in the vehicle at the time of manufacture and sale attributable to negligence and/or breach of warranty on the part of the defendant, and (2) a chain of causation between the alleged defect and the plaintiff's injuries. See Goffredo v. Mercedes-Benz Truck Co., Inc., 402 Mass. 97, 103 (1988); see also Gynan v. Jeep Corp., 13 Mass.App.Ct. 504, 508 (1982). Massachusetts law clearly establishes the need for expert testimony as to both elements. Given plaintiff's complete failure to timely provide expert testimony and the Court's Order precluding plaintiff from calling an expert, she cannot adduce the evidence necessary to generate a genuine issue of material fact.

The defendant is therefore entitled to judgment as a matter of law on all counts.

**A. The complexity of a motor vehicle's design necessitates expert testimony regarding the existence of a defect.**

Contrary to the plaintiff's arguments, a jury's determination as to whether the area under the subject vehicle's steering column is defective would, by law, involve much more than a simple "understanding of the difference between a hard surface and a soft surface, and the difference in sensation caused by colliding with a protruding object as opposed to a smooth surface." See Plaintiff's Opposition at p. 4. To prove her allegations, the plaintiff must provide competent evidence of a defect in the subject vehicle that caused or contributed to cause her injuries.

Plaintiff is obliged to present expert testimony regarding the design of the area under a vehicle's steering column at the time the vehicle was manufactured, of the design of that area in the subject vehicle, of possible alternatives to that design, and of the expense of those alternatives. See Gynan, 13 Mass.App.Ct. at 508-09 (expert testimony is required to establish that the placement of the vehicle's headlights and the illumination provided by them failed to comply with 1974 federal standards and industry practice in design); see also White v. Nissan Motor Corp. in U.S.A., 1999 WL 819566 at *3 (Mass.Super. Aug. 26, 1999) (granting summary judgment to defendant-automotive manufacturer on plaintiff's claims that his vehicle's seat was defective due to "the lack of padding, position of the tubular bar and the lack of a headrest" because the plaintiff had failed to present expert testimony with regard to the above issues). Plaintiff has failed to provide evidence sufficient to prove the existence of such a defect. See White, 1999 WL at *3 (finding that the plaintiff's "comparison of the thickness of his trunk's

front seat with other manufacturers' pickup trucks' front seats . . . will not suffice to demonstrate that his seat was defective").

Because a motor vehicle is "not a simple device [but r]ather a product consisting of a number of relatively complex working parts," a proper understanding of the plaintiff's claims as to defect requires not merely consideration of the design of the allegedly defective area, but of that design in the context of the design of the vehicle as a whole. See Makuc v. American Honda Motor Co., 835 F.2d. 389, 392 (1st Cir. 1987)(internal citations omitted) (precluding the jury from drawing an inference regarding an alleged defect in a motorbike's axle due to recognition of the motorbike's overall complexity). Plaintiff has failed to provide any such evidence, and instead rests on the assertions made in her pleadings that the design of the area under the vehicle's dash is defective because it has what she characterizes as "hard" surfaces.

Plaintiff's reliance on cases in which expert testimony was determined to be unnecessary is misplaced, as those cases involved relatively simple machinery which does "not fit within the class of products where *the number or sophistication* of working parts would preclude drawing the inference" of defect. See Calvanese v. W.W. Babcock Co., Inc., 10 Mass.App.Ct. 726, 734 n.9 (1980) (stepladder design simple enough not require expert testimony) (emphasis added); see also doCanto v. Ametek, Inc., 367 Mass. 776, 782-83 (1992) (industrial iron); Coyle v. Cliff Compton, Inc., 31 Mass.App.Ct. 744, 749-50 (1975) (overhead garage door). The plaintiff's self-serving claims that the design of the area in question was defective are insufficient to create

a genuine issue of material fact, as the plaintiff freely "admit[s] that [she is] not a mechanical engineer or automobile design expert." See Plaintiff's Affidavit at ¶ 16.

As to plaintiff's failure to warn claims, plaintiff has likewise failed to present any competent evidence of a condition in the area of the vehicle at issue of which the manufacturer either knew or should have known at time of manufacture that could have presented a hazard in the specific circumstances of the subject incident. Vassallo v. Baxter Healthcare, 428 Mass. 1, 21, 23(1998); Slate v. Bethlehem Steel Corp., 400 Mass. 378, 383 (1987). Other than plaintiff's bare assertions, there is nothing in the record to support such claims.

**B. Even if the plaintiff could establish a defect, summary judgment is warranted because expert testimony is required to prove that such a defect caused or contributed to cause her alleged injuries.**

Even if this Court were to determine that the plaintiff need not present expert testimony in support of her defect allegations or could otherwise prove a defect, summary judgment is still appropriate given her failure to present expert testimony as to how the alleged defect caused or contributed to cause her claimed injuries. Massachusetts courts have consistently recognized the need for expert medical testimony on technical medical issues, including those regarding injury causation. See Lally v. Volkswagen Aktiengesellschaft, 45 Mass.App.Ct. 317, 324-26 (finding that question as to whether plaintiff's impact with vehicle's open glove box door caused his spinal injury was not "sufficiently obvious as to lie within [the jury's] common knowledge" and citing multiple decisions from Massachusetts and other jurisdictions requiring expert testimony

in cases involving injury causation); see also Kaye v. Newhall, 356 Mass. 300, 303 (1969) (holding it prejudicial error to submit case to jury where plaintiff's testimony that the defendant's conduct caused his impotence was unsupported by "medical evidence" as to both the impotence and its cause); White, 1999 WL at * 3 (noting that expert testimony was required in order for the plaintiff to raise a question of fact as to whether the seat's defect caused or exacerbated his injuries). Similarly, a lay jury is unequipped to determine whether the plaintiff's claimed injuries resulted from impact with the area in question.

Plaintiff's involvement in another motor vehicle accident prior to the one at issue reinforces the need for expert testimony regarding the causes of her injuries. In cases in which a plaintiff's injuries may have multiple sources, expert testimony is required to aid the jury in its determination as to what degree, if any, the subject incident proximately caused or contributed to those injuries. See, e.g., Casey's Case, 348 Mass. 572, 574 (1965) (holding that expert testimony is required to aid the jury in determination as to whether plaintiff's back injury was caused by one, or both, of two successive workplace accidents); Crowley's Case, 287 Mass. 367, 375-76 (1934) (determining that, without experts, evidence was insufficient to find that plaintiff's hernia had originated from particular strain where plaintiff had suffered three separate strains). In this case, the plaintiff admits that she was involved in another motor vehicle accident prior to the subject accident in which she sustained injuries, including an injury to the same knee she claims was injured in the subject incident. See Plaintiff's Affidavit at ¶9; Exhibit B, Deposition of Deborah Sirotkin Butler at 31, 44-45.

Plaintiff is not herself a medical expert, has failed to timely disclose any expert testimony on injury causation, and is barred by the Court's December 12 Order from presenting expert testimony. The plaintiff's averrals in her Affidavit that the subject accident caused her injuries are not competent causation evidence, and do not merit consideration for the purposes of this motion. <u>See</u> <u>Casey's Case</u>, 348 Mass. at 574; <u>Kaye</u>, 356 Mass. at 303.

What plaintiff's case amounts to is no more than this: That she was operating a vehicle manufactured by against DaimlerChrysler Corporation on October 7, 2002 when she was involved in a rear-end collision, that she claims a knee injuries resulting from the accident, and that she believes those injuries resulted from the defendant's misconduct. The averrals in plaintiff's Affidavit and the statements that plaintiff characterizes as "Undisputed Material Facts" merely rehearse the claims asserted in the Complaint. Plaintiff has provided no competent evidence on the key issues of the case: the existence of defects in the area underneath the dash of the subject vehicle that could have injured her as claimed; the speed at which the collision occurred; the direction of the forces that came to bear on her body as a result of the collision and the magnitude of those forces given the accident conditions and plaintiff's position in the vehicle at the time of the collision; and the movements of her body in the course of the collision, and the objects, if any, in the vehicle's interior with which her body came into contact in the course of the collision. Plaintiff's Opposition does nothing more than restate her previous, unsubstantiated allegations that when her vehicle was struck in the rear by another vehicle, her knee somehow struck some supposedly hard object in the area under the subject vehicle's dashboard and that she was injured as a result.

Without expert testimony, the jury would be forced to rely on pure conjecture and speculation in deciding whether the claimed defects in the subject vehicle proximately caused or contributed to the plaintiff's alleged injuries. Summary judgment for DaimlerChrysler Corporation is therefore appropriate. See Ricci v. Alternative Energy Inc., 211 F.3d 157, 162 (1st Cir. 2000), citing Restatement (Second) of Torts § 433B cmt. a.

## III. CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Defendant's previously filed Motion to Preclude Expert Testimony and for Summary Judgment, Rule 56.1 Statement of Undisputed Material Facts, and related filings, the Defendant requests that the Court grant it summary judgment as to all Counts of the Plaintiff's Complaint, and dismiss them with prejudice.

Defendant,
DaimlerChrysler Corporation,
By its attorneys,

/s/ Peter M. Durney
Peter M. Durney, BBO # 139260
PDurney@cornellgollub.com
James P. Kerr, BBO # 564538
JKerr@cornellgollub.com
CORNELL & GOLLUB
75 Federal Street
Boston, MA 02110
(617) 482-8100

**CERTIFICATE OF SERVICE**

I, James P. Kerr, attorney for the defendant, DaimlerChrysler Corporation, hereby certify that on the 5th day of January, 2007, a true copy of the foregoing Defendant DaimlerChrysler Corporation's Reply Memorandum in Support of its Motion to Preclude Expert Testimony and for

Summary Judgment, will be filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ James P. Kerr
James P. Kerr

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEBORAH SIROTKIN BUTLER,     *
                                       *
            Plaintiff,         *
                                       *
        v.                    *       Civil Action No. 05-11679-JLT
                                     *
CHRYSLER CORPORATION,     *
                                     *
            Defendant.     *

ORDER

December 12, 2006

TAURO, J.

    After a conference held on December 12, 2006, this court hereby orders that:

1.    Defendant's Motion to Compel [#19] is DENIED AS MOOT, based on the

parties' representations that Defendant has acquired the relevant documents.

2.    Defendant's Motion to Preclude Expert Testimony and for Summary Judgment

[#16] is ALLOWED IN PART without opposition.  Plaintiff is precluded from

calling an expert at trial.

3.    Plaintiff's will be granted until December 22, 2006, to file a memorandum in

opposition to Defendant's Motion for Summary Judgment [#16].

4.    Defendant may file a reply brief by January 5, 2007.

5.    Trial will commence on April 2, 2007, at 10:00 am.

IT IS SO ORDERED.

                                  /s/ Joseph L. Tauro
                            United States District Judge

Volume: I

Pages: 1-130

Exhibits: A-O

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Civil Action No. 05-11679-JLT

- - - - - - - - - - - - - - - - - - - x

DEBORAH SIROTKIN BUTLER,

Plaintiff,

vs.

CHRYSLER CORPORATION,

Defendant.

- - - - - - - - - - - - - - - - - - - x

DEPOSITION OF DEBORAH SIROTKIN BUTLER

Wednesday, March 15, 2006

Cornell & Gollub

75 Federal Street

Boston, Massachusetts

Commencing at 10:15 a.m. - 2:28 p.m.

Reporter: Karen A. Morgan, CSR/RPR

Q. Had you had any problems with the Neon prior to October 7, 2002?

A. I was in one other auto accident.

Q. Was that at -- we have received records from Commerce and Liberty Mutual.

A. Sure.

Q. And that's a record of a July 30, 2001 accident.

A. Right. I was on my way to Framingham Juvenile Court and I was in a right travel lane and this lady in an SUV decided to turn and apparently she didn't see me and turned through my car from behind.

Q. Was that Barbara Hannigan?

A. It might have been. I remember what she looked like. I don't remember her name. Tall blonde lady. I notice tall.

MS. LAMANNA: Can we go off the record?

MR. KERR: Yes.

(Discussion off the record.)

(Exhibit C was marked for identification.)

(A break was taken.)

Q. Back on the record. I marked a Commonwealth of Massachusetts operators report of motor vehicle

pain or problem in the knee. Where I had continuing pain and problem was my right shoulder and my right foot. My knee didn't require follow-up treatment. It didn't -- nothing happened. It didn't hurt. It wasn't stiff, nothing, but I had various and sundry bruises and scrapes and scratches from that one because she really did hit me very hard.

Q. You said you had continuing knee pain at the time?

A. No, I didn't is what I said. I had no continuing knee pain. I had a bruise on my knee.

Q. Was that as a result of the accident or did that come from some other source?

A. I presume it was a result of the accident. I had other bruises, scratches and scrapes. I had red marks from every where the restraint was on my body for example. That was a hard hit.

Q. In your judgment what were the primary injuries that you sustained from the July 30, '01 accident?

A. I sustained a sprained neck, a sprained shoulder, sprained metatarsals in right ankle and a severely injured, it sounds stupid, big toe on the right foot where the whole toe turned purple and the

nail fell off and the physical therapist called it a set of twisting shaking injuries because of being hit on an angle and I had physical therapy for the shoulder which is still not right. It will crack and pop and I use heat on it several times a week. Whatever happened to the shoulder.

Q. Did you have any problems with your knee prior to July 30, '01? Your left knee.

A. I'm trying to think of if I had specific left knee problems and what I can say is I have had lots of physical problems. I don't remember my left kneel being a negative super star. For example, I was born with double club feet and I had both feet and legs rebuilt. I have had to learn to walk more than once. So when it comes to structural problems, I have had lots of them but I can't -- I don't recall having a specific problem with the left knee.

Q. Now there's a third page to Exhibit E and I just want to draw your attention to that handwriting at the top of the page. Is that yours?

A. Yes.

Q. Okay. Do you remember preparing this document?

A. No, but I recognize my handwriting but it's